IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAREFUSION CORPORATION | : | |
| 3750 Torrey View Court | : | Case No.: |
| San Diego, CA   92130 | : | |
| | : | |
| and | : | |
| | : | |
| CAREFUSION 303, INC. | : | |
| 3750 Torrey View Court | : | |
| San Diego, CA   92130 | : | |
| | : | |
| Plaintiffs, | : | Judge: |
| | : | |
| v. | : | |
| | : | |
| PYXIS MOBILE, INC. | : | |
| 1601 Trapelo Road, Suite 260 | : | |
| Waltham, MA   02451 | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

Plaintiffs CareFusion Corporation and CareFusion 303, Inc. (collectively, "CareFusion" or "Plaintiffs") through their undersigned counsel, for their complaint against Defendant Pyxis Mobile, Inc. ("Pyxis Mobile" or "Defendant"), state as follows:

1. This is an action for unfair competition and false designation of origin and trademark infringement, pursuant to 15 U.S.C. § 1125(a) and trademark infringement, pursuant 15 U.S.C. § 1114, with respect to unauthorized use of Plaintiffs' trademarks in a manner as to deceive consumers as to the affiliation, connection, or association of Defendant with Plaintiffs.

4614173v3

**Parties**

2.     Plaintiff CareFusion is a Delaware corporation with its principal place of business at 3750 Torrey View Court, San Diego, California 92130. CareFusion is a global company serving the healthcare industry with products and services designed to improve patient care, including the well-known line of Pyxis® medication dispensing products which are widely used in hospitals and healthcare facilities throughout the United States.  CareFusion was spun off of its parent, Cardinal Health, Inc. in August of 2009, and still maintains fifty (50) employees and some operations in Dublin, Ohio, including certain Clinical Operations for Pyxis products, and many financial and tax operations for CareFusion.

3.     Plaintiff CareFusion 303, Inc. is a Delaware corporation with its principal place of business at 3750 Torrey View Court, San Diego, California 92130, and is a wholly-owned subsidiary of CareFusion Corporation.  CareFusion 303 is the owner of the registered Pyxis trademarks.

4.     Upon information and belief, Defendant Pyxis Mobile, Inc. is a Massachusetts corporation with its principal place of business at 1601 Trapelo Road, Suite 260, Waltham, Massachusetts 02451.  Pyxis Mobile has developed a mobile enterprise application platform that allows organizations in a wide variety of industries, including the healthcare industry, to build and deploy applications for mobile devices such as iPhone, iPad, BlackBerry, Android and Android tablets.   Pyxis Mobile sells its software platform to companies throughout the United States, including in the State of Ohio, and markets several applications, such as its "Movela Netflix Queue Manager" and "Craigslist Mobile" applications directly to consumers through Android application stores.  According to its May 5, 2011 press release, Pyxis Mobile's customer list includes "professional services, firms, insurance providers, major universities, manufacturers,

2

healthcare providers, leading analyst firms, financial services companies, state governments and more."

## Jurisdiction and Venue

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338(a) and (b). Personal jurisdiction in this District is proper inasmuch as Defendant is doing business in this District. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2).

## Facts
### CareFusion's Pyxis Trademarks and Products

6. CareFusion and its affiliates and related companies and predecessors in business (collectively, "CareFusion") since at least as early as 1980 and continuing to the present, have been engaged in the business of manufacturing, distributing and selling various and wide-ranging types of health care, pharmaceutical and medical products and related goods, accessories and services. Since 1989, CareFusion has been using the term Pyxis in the U.S. as a trade name, corporate name, trademark and service mark in connection with the promotion, sale, installation and use of medical products and providing of services by Pyxis Corporation, now CareFusion.

7. CareFusion is a leading global medical technology company with clinically proven and industry-leading products and services designed to measurably improve the safety and quality of healthcare. CareFusion offers comprehensive product lines in the areas of IV infusion, medication and supply dispensing, respiratory care, infection prevention and surgical instruments to customers in the United States and over 130 countries throughout the world.

8. CareFusion is one of the world leaders in the design, manufacture and marketing of automated medication dispensing products, point of care verification products, and automated medical supply dispensing products, all of which are sold under the Pyxis trademark. CareFusion

3

created the market for automatic medication dispensing machines in the late 1980's and remains the market leader.  A Pyxis® automated medication dispensing machine (ADM) is essentially a cabinet that holds various medications (or medical supplies) that is built around, and run by, computer hardware and software.  Pyxis systems allow for decentralized medication management (medications securely maintained on the nursing unit), and CareFusion was the first to market with an ADM, and is the market leader with 5 times the market share (units) of the nearest competitor.  Pyxis® MedStation® ADMs can be found in 72% of US Acute Care hospitals.  CareFusion has also developed line extensions (Pyxis Anesthesia System, CIISafe, etc.) that create an integrated, systems approach to medication management.

    9.  In the past few years, technology in the healthcare industry has advanced dramatically in the areas of integrating various types of health care records, reports, treatment and patient information.  Pyxis systems are designed to integrate with third party operational and informational systems.  These include both clinical systems, such as pharmacy information systems and electronic medical records; as well as business systems, such as admissions, discharge and transfer systems.  CareFusion also specializes in the development of interfaces that allow Pyxis devices to interface across all of the major IT platforms in healthcare today.

    10.  Mobile devices and wireless, interconnected operating systems which allow healthcare professionals to interface with clinical and business systems are a growing part and a logical expansion of the Pyxis product line.  Pyxis "Point of Care" verification products, which allow healthcare professionals to scan and enter patient and medication data directly from the patient's bedside onto a portable handheld device, account for one third of Pyxis products.  These devices make use of barcode technology to scan information from patient identification wristbands to verify a number of crucial patient care areas, such as verification that the patient is

4

receiving his/her prescribed medications.   An example of a portable Pyxis device is depicted below:



11.    Plaintiff is the owner of the trademark Pyxis, the United States Trademark Registrations thereof, and the goodwill symbolized by the trademarks and the registrations thereof, as follows:

a) PYXIS - Registration No. 1,813,422, registered December 28, 1993, for computer hardware, software and instruction manuals sold therewith for computerized point of use, storage, tracking and data collection for the purpose of inventory and bill control.

b) PYXISVERI5 - Registration No. 2,511,182, registered November 20, 2001, for Bar code scanners used to avoid patient medication errors.

c) PYXISCONNECT - Registration No. 2,653,244, registered November 26, 2002, for Physician order management system comprising computer hardware, software and scanner

d) PYXIS PATIENTSTATION - Registration No. 2,664,697, registered December 17, 2002, for Bedside computer system comprising computer hardware and software which provides clinicians, patients and healthcare personnel with healthcare information choices at the point of care in the fields of medication verification, medication administration recording, web-enabled clinical information, patient information, outpatient/homecare services, ordering meals, completion of electronic patient satisfaction surveys and patient support services

5

    e)   PYXISCONSULTANT - Registration No. 2,684,078, registered February 4, 2003, for Software that integrates patient, cost, treatment and outcome data of healthcare institutions

    f)   PYXIS VERI5 – Registration No. 2,953,201, registered May 17, 2005, for Automated bar code scanners used to avoid patient medication errors.

    g)   PYXIS – Registration No. 3,965,332, registered May 24, 2011, for Automated machines for dispensing dosages of medicine and medical supplies

Copies of the certificates of registration for each of the above trademarks are attached as Exhibit A.

12.     The certificates of registration identified in paragraph 11 are valid and subsisting; the certificates of registration are *prima facie* evidence of the validity of the registrations, the Plaintiffs' ownership of the mark, and of the Plaintiffs' exclusive right to use the mark in commerce in connection with the goods specified in the certificates of registration under the provisions of 15 U.S.C. § 1057(b), and constructive notice of the Plaintiffs' claim of ownership under 15 U.S.C. § 1072.  Registration Nos. 1,813,422; 2,511,182; 2,653,244; 2,664,697; 2,684,078; and 2,953,201 are incontestable, which provides conclusive evidence of their validity, Plaintiffs' ownership of the marks and Plaintiffs' exclusive right to use the marks in commerce under 15 U.S.C. § 1115(b).

13.     CareFusion has been selling other medical products under the Pyxis name, including the following for which it has pending U.S. trademark applications:

    a)     PYXIS ONCOLOGYSTATION – Machines for dispensing dosages of medicine and medical supplies; computer hardware and software for medication order management; securing, tracking, monitoring and replenishment of medicine and medical supplies for such machines.

    b)     PYXIS SPECIALTYSTATION -- Machines for dispensing dosages of medicine and medical supplies; computer hardware and software for medication order

6

4614173v3

      management; securing, tracking, monitoring and replenishment of medicine and medical supplies for such machines.

    c)    PYXIS MEDSTATION -- Machines for dispensing dosages of medicine and medical supplies; computer hardware and software for medication order management; securing, tracking, monitoring and replenishment of medicine and medical supplies for such machines.

    d)    PYXIS CIISAFE -- Machines for dispensing dosages of medicine and medical supplies; computer hardware and software for medication order management; securing, tracking, monitoring and replenishment of medicine and medical supplies for such machines.

14. In addition to the goods covered by its registrations and applications, Plaintiff has used Pyxis as a trade name, corporate name, trademark, service mark and house mark, on numerous medical goods and services and in the promotion of such goods and services, including but not limited to a wide variety of goods and services, including:

    computer hardware, software and instruction manuals sold therewith for computerized point of use, storage, tracking and data collection for the purpose of inventory and bill control;

    Bar code scanners used to avoid patient medication errors;

    Physician order management system comprising computer hardware, software and scanner;

    Bedside computer system comprising computer hardware and software which provides clinicians, patients and healthcare personnel with healthcare information choices at the point of care in the fields of medication verification, medication administration recording, web-enabled clinical information, patient information, outpatient/homecare services, ordering meals, completion of electronic patient satisfaction surveys and patient support services; and

    Software that integrates patient, cost, treatment and outcome data of healthcare institutions.

15. Pyxis products are presently marketed to medical and health care professionals, hospitals, clinics and providers of medical and health care services, all of which are increasingly

demanding the type of integrated mobile applications and products that CareFusion supplies and is developing under its Pyxis line of products.

16. The reason for such increased demand is simple: beginning in about 2008, and continuing through today, sales and use of "smartphone" mobile devices has skyrocketed. The number of U.S. residents using mobile devices to get news and information more than doubled to 63.2 million in 2008. A.C. Nielsen reports that 31% of U.S. mobile phone owners had a smartphone as of December 2010, and in the fourth quarter of 2010, worldwide sales of the devices topped 100 million – an 87% increase over fourth quarter sales in 2009, and surpassing sales of desktop computers by nearly 10 million. In the U.S., sales of smartphones are expected to grow from 67 million in 2010 to 95 million in 2011, and become the highest-selling consumer electronic device category.

17. Healthcare professionals have embraced the convenience of smartphone devices as well. According to Manhattan Research, a global pharmaceutical and healthcare market research and strategic advisory firm:

> Smartphone ownership among physicians continues to surge in 2011, making this a more vital channel than ever for marketers to consider in their digital strategies. Currently, 81% of physicians own a smartphone, exceeding analyst projections by nearly a year.

See Exhibit B.

## Pyxis Mobile's Use of the PYXIS Mark

18. Upon information and belief, Pyxis Mobile was incorporated in 1998 under the name "Pyxis Consulting". At that time, according to its trademark application, serial no. 75/735332 (which was subsequently abandoned), the company was engaged in "Consulting services in the areas of project management, needs analysis, application design and implementation".

8

19. In November of 2004, CareFusion, through its predecessor, Cardinal Health, Inc. ("Cardinal Health"), became aware of Pyxis Consulting through a press release that announced that the owners of BlackBerry had chosen software produced by Pyxis Consulting to run mobile software applications for use by financial professionals.  On November 5, 2004, counsel for Cardinal Health wrote to Pyxis Consulting to express its concerns that Pyxis Consulting was expanding its use of the Pyxis mark, and warn Pyxis Consulting that Cardinal Health would not permit its Pyxis mark to be infringed or diluted by third party use in related fields or for a third party to expand into areas that would likely result in a likelihood of confusion with Cardinal Health's Pyxis products.  See November 5, 2005 letter, attached hereto as Exhibit C.

20. In a follow up telephone conversation with counsel for Cardinal Health on November 12, 2004, Pyxis Consulting's then-CEO & President, Shane Hughes, stated that he was aware of Cardinal Health's Pyxis line of business, which he referred to as "Big Pyxis".  Mr. Hughes then assured counsel for Cardinal Health that if Pyxis Consulting moved beyond the financial services software business, it would change its name.

21. Without advising Cardinal Health, in May of 2005, the re-named Pyxis Mobile filed a trademark application, serial number 76/639254, for PYXIS MOBILE (and design), for "Software for enterprise sales force information on a mobile device, namely BlackBerry, pocket PC and Palm, for use in the financial services industry."  The Trademark Office issued an Office Action, refusing registration based upon a likelihood of confusion under Section 2(d) of the Lanham Act with CareFusion's registration of PYXIS, Registration No. 1,813,422, registered December 28, 1993, for "computer hardware, software and instruction manuals sold therewith for computerized point of use, storage, tracking and data collection for the purpose of inventory and

9

bill control." See Exhibit D.  Pyxis Mobile abandoned its application, but continued to operate and sell its software products under the name "Pyxis Mobile".

22.     The explosive growth in smartphone sales and usage has driven tremendous growth in the market for mobile applications, or "apps".  Many of these apps use so-called "tag reader" technology, which allows a user to swipe the mobile device over a tag, such as a bar code, to enter and read information.  In recent years, Pyxis Mobile has moved beyond developing software for financial institutions and has focused on developing all types of applications for use on mobile devices.  Because Pyxis Mobile's primary product is a software platform that allows non-developers at companies to build and update custom mobile apps, the company has experienced significant growth in the past few years.  In a May 5, 2011 press release, Pyxis Mobile noted that "Fourth quarter 2010 revenues increased more than 90 percent from the final quarter of 2009, to reach its peak in 12 years, while 2010 full-year revenue grew more than 60 percent from 2009."

23.     While still active in the financial services industry, Pyxis Mobile has expanded its product offerings to include apps for the retail, manufacturing, higher education, government, real estate, transportation, automotive and media industries.  CareFusion has learned that contrary to its CEO's representations in 2004, Pyxis Mobile has now expanded directly into and is targeting CareFusion's market -- the health and life sciences industries.  According to its website:

> Pharmaceutical and biotech manufacturers, wholesalers and distributors, medical device manufacturers, and healthcare providers are using mobility to create operational efficiencies in an increasingly competitive market.  With Pyxis Mobile, companies provide intuitive, anywhere access to critical data and functionality that makes their sales teams and service agents more productive in the field.

See Exhibit E.

10

24. In particular, Pyxis Mobile touts its healthcare mobile apps as being able to perform functions that are squarely within the purview of CareFusion's Pyxis products. Its website states:

**With the Pyxis Mobile 7 platform, your mobile health and life sciences applications can**:

- Securely integrate data from CRM, EMR and any other enterprise systems
- Enable drug and medical device sales reps to track and manage accounts, pipelines and performance so they are on top of their lead generation, commission statements and opportunities
- Provide hospitals and physician practices with the ability to:
    - Fill out patient charts and retrieve patient history
    - Manage patient scheduling
    - View, prescribe, renew, and update medications
    - Submit lab orders and view results
- Help consumers monitor health issues, medical conditions and physical activity levels while on the go, wherever they are

See Exhibit F.  An example of a mobile device running a Pyxis Mobile health care app is depicted below:



25. Pyxis Mobile is attempting to further expand its healthcare business, as demonstrated by the featured Customer Case Study Video that appears on its website. The

11

featured customer, Healthrageous, Inc., develops applications which assist healthcare professionals by providing mobile biometric systems which enable physicians to monitor a patient's medication compliance and overall condition.  See Exhibit G.  Pyxis Mobile is also actively soliciting other companies within the healthcare industry to develop applications using the Pyxis Mobile platform, which will unquestionably lead people within the healthcare industry to think that Pyxis Mobile and its products are associated with CareFusion's Pyxis products.

26. Despite Pyxis Mobile's CEO having assured CareFusion in 2004 that it would not expand its use of the Pyxis name into the healthcare field, Pyxis Mobile has now clearly done so, with knowledge of Plaintiff's prior rights, and has both encroached on CareFusion's existing market and is expanding its use within CareFusion's natural zone of expansion for its use of its PYXIS marks.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

27. Plaintiffs incorporate the allegations contained in paragraphs 1 through 26 as if fully restated herein.

28. Defendant's aforementioned acts constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

29. Defendant's adoption, use and promotion of the PYXIS mark on healthcare-related products, including without limitation, mobile device applications, creates a likelihood of confusion as to the affiliation, connection, association or sponsorship, affiliation or endorsement by CareFusion in an appreciable number of healthcare professionals and other consumers and potential consumers.

30. As a proximate result of Defendant's actions, CareFusion has suffered and will continue to suffer great damage to its business, goodwill, reputation and profits.  The injury to

12

CareFusion is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate CareFusion for its injuries and CareFusion lacks an adequate remedy at law.

31. The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, done with full knowledge of CareFusion's prior rights to the PYXIS mark in the healthcare field, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

32. CareFusion is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorneys' fees.

**COUNT TWO**
**UNFAIR COMPETITION AND FALSE DESIGNSATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)**

33. CareFusion incorporates the allegations contained in paragraphs 1 through 32 as if fully restated herein.

34. Defendant's adoption, use and promotion of the PYXIS mark on healthcare-related products, including without limitation on mobile device applications, will likely cause confusion, mistake or deception on the part of persons using Defendant's products, as to the origin, sponsorship or approval by CareFusion of the Pyxis Mobile's mobile health care applications in violation of 15 U.S.C. Section 1125(a).

35. Defendant's unfair competition has been willful and deliberate, done with full knowledge of CareFusion's prior rights in the PYXIS marks in the healthcare field and was designed specifically to trade upon the consumer goodwill enjoyed by CareFusion.

36. CareFusion's consumer goodwill is of enormous value, and CareFusion is suffering and will continue to suffer irreparable harm if Defendant's unfair competition as to its

13

use and promotion of the PYXIS mark on healthcare-related products, including without limitation on mobile device applications, is allowed to continue.

37. Defendant's unfair competition will continue unless enjoined by this Court.

38. CareFusion is entitled to a preliminary and permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

(1) that Defendant, its officers, agents, servants and employees, and all others in concert and privity with them, be permanently enjoined from:

> (a) Infringing, or falsely designating the origin of the PYXIS marks for healthcare-related products, including without limitation on mobile device applications, from using the PYXIS marks in commerce for any healthcare or medical-related products, including without limitation on mobile device applications; and from injuring CareFusion's reputation;
>
> (b) doing any other act or thing likely to induce the belief that Defendant's healthcare related products, including without limitation on mobile device applications, are in any way connected with, sponsored, affiliated, licensed, or endorsed by Plaintiff.

(2) that Defendant be directed to file with this Court and serve upon Plaintiffs within thirty (30) days after service of the permanent injunction a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the permanent injunction;

(3) that Defendant be deemed liable for and ordered to reimburse Plaintiffs for their reasonable attorneys' fees;

14

(4) that Plaintiffs be awarded exemplary damages for Defendant's willful and intentional acts;

(6) that Plaintiffs recover their costs of court; and

(7) that Plaintiffs recover such further relief to which they may be entitled.

Respectfully submitted,

 /s/ Joseph R. Dreitler
Joseph R. Dreitler (0012441)
Mary R. True   (0046880)
Bricker & Eckler LLP
100 S. 3rd Street
Columbus, OH 43215-4291
Telephone: 614.227.2300
Facsimile:  614.227.2390
jdreitler@bricker.com
mtrue@bricker.com

*Counsel for Plaintiffs,*
*CareFusion Corporation and CareFusion 303, Inc.*

15